Judith M. Brawer (MT Bar # 4308)
1502 N. 7th Street
Boise, Idaho 83702
(208) 871-0596
(208)343-2070 (fax)
jbrawer@jbrawerlaw.com

Michael Senatore (DC Bar # 453116)
Center for Biological Diversity
1601 Connecticut Ave., N.W., Suite 701
Washington, D.C. 20009
(202) 232-1216
(202) 232-1217 (fax)
msenatore@biologicaldiversity.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) | |
| FEDERATION OF FLY FISHERS, ) | |
| WESTERN WATERSHEDS PROJECT, ) | **Case No. _____** |
| GEORGE WUERTHNER, and PAT MUNDAY ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **COMPLAINT** |
| vs. ) | |
| ) | |
| U.S. FISH AND WILDLIFE SERVICE, and ) | |
| DIRK KEMPTHORNE, Secretary of the Interior ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**INTRODUCTION**

1.     The fluvial Arctic grayling (*Thymallus arcticus*) in the Big Hole river in Montana

represents the last native fluvial grayling population in the continental United States. Once

widely distributed throughout the Upper Missouri river drainage above Great Falls, Montana,

today this remnant population exists in only one river, representing about 4% of its historic

range.

       2.      For over two decades, scientists and the U.S. Fish and Wildlife Service ("FWS")

recognized that this unique and isolated grayling population warrants Endangered Species Act

("ESA") protection as a so-called "distinct vertebrate population segment" (hereinafter "DPS").

As FWS stated as recently as 2004:

> We find the fluvial Arctic grayling of the upper Missouri River basin to be
> discrete and significant as required under the policy regarding the recognition of
> Distinct Vertebrate Population Segments. We have determined that this DPS is
> *discrete* based on geographic, ecological, and behavioral differences relative to
> other members of its taxon; and is *significant* primarily because of its presence in
> a unique ecological setting and also its genetic distinctiveness. This assessment is
> supported by: a) evidence of geographic isolation over evolutionary significant
> time scales which has resulted in quantifiable genetic differences between basins,
> b) ecological and genetically-based behavioral differences between the fluvial
> (river-dwelling) life history type and other forms of Arctic grayling in the upper
> Missouri River basin, and c) the unique ecological setting of this southernmost
> fluvial Arctic grayling population in a non-Arctic drainage which represents an
> important element of the biogeographic and evolutionary legacy of the species,
> and d) the gap in the species distribution that would occur should the DPS be
> extirpated. Thus, we believe the fluvial Arctic grayling of the upper Missouri
> River constitutes a Distinct Population Segment (DPS).

*U.S. Fish and Wildlife Service, Species Assessment and Listing Priority Assignment Form for*

*fluvial Arctic grayling (distinct population segment of the Upper Missouri River), commonly*

*called Montana Arctic grayling* (November 30, 2004).

       3.      In April 2007 FWS did a sudden and inexplicable about face, finding that the

Montana fluvial Arctic grayling is not "significant" pursuant to the agency's DPS policy, and

thus is not a listable entity under the ESA.

       4.      Plaintiffs seek judicial reversal of this finding, which will result in the certain

extinction of the only fluvial grayling population in the continental United States; violates the

ESA and Congressional intent concerning the protection of species and distinct population

COMPLAINT -- 2

segments; is contrary to the conclusions of FWS' own scientists; and is not supported by the best available science.  In the alternative, Plaintiffs seek to compel FWS to list a DPS that includes both the fluvial and adfluvial grayling populations in Montana.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under 16 U.S.C. § 1540(g) (ESA citizen suit provision); 5 U.S.C. §§ 701-706 (APA); 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (declaratory judgment).

6.     Venue lies in this judicial district by virtue of 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e).

7.    Plaintiffs have provided FWS with sixty days' written notice of the violations alleged herein pursuant to 16 U.S.C. § 1540(g).

8.    Plaintiffs have formally demanded that FWS correct the violations of the ESA alleged herein, but FWS has failed to comply with these demands and continues to do so.  An actual controversy therefore exists between the parties within the meaning of 28 U.S.C. § 2201(a) (Declaratory Judgment).

## PARTIES

9.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a non-profit corporation dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, and public lands throughout the United States.  The Center has over 35,000 members, including members who reside in Montana. The Center, its staff and members, have an interest in ensuring the conservation and recovery of the Montana fluvial Arctic grayling through the grayling's listing under the ESA. The Center's members and staff regularly use lands and intend to continue to use the waters and lands throughout the western United States, including the habitat and potential habitat of the Montana fluvial Arctic grayling, for observation, research,

aesthetic enjoyment, and other recreational, scientific, and educational activities.  The Center's

members derive scientific, recreational, health and aesthetic benefits from the Montana fluvial

Arctic grayling's existence in the wild. Jasper Carlton, a Center member and former director of

the Biodiversity Legal Foundation, which was incorporated into the Center, was the primary

author of the petition to list the grayling as endangered.

10.     Plaintiff, THE NATIONAL FEDERATION OF FLY FISHERS ("FFF"), is a non-

profit membership organization headquartered in Livingston, Montana. FFF is dedicated to the

betterment of the sport of fly fishing through conservation and education. FFF has approximately

12,000 individual members in Montana as well as throughout North America and internationally.

In addition, FFF membership includes over 300 fly fishing clubs from throughout the United

States, including from Montana. FFF, its staff and individual and club members have an interest

in ensuring the conservation and recovery of the Montana fluvial Arctic grayling through the

grayling's listing under the ESA. FFF, its members and staff, regularly use the lands and waters

throughout the western United States, including the habitat and potential habitat of the Montana

fluvial Arctic grayling, for observation, research, health, aesthetic enjoyment, and other

recreational, scientific, and educational activities. FFF, its members and staff, intend to continue

to use these lands and waters, and derive scientific, recreational, health and aesthetic benefits

from the Montana fluvial Arctic grayling's existence in the wild.

11.     Plaintiff WESTERN WATERSHEDS PROJECT ("WWP") is a non-profit

membership organization dedicated to protecting and conserving the public lands and natural

resources of watersheds in the American West. WWP has over 1,200 members, including many

members who live in Montana. WWP, as an organization and on behalf of its members, is active

in seeking to protect and improve the riparian areas, water quality, fisheries and other natural

resources and ecological values of western watersheds. WWP and its individual members have an

interest in ensuring the conservation and recovery of the Montana fluvial Arctic grayling through the grayling's listing under the ESA. WWP, its members and staff regularly use lands and intend to continue to use the waters and lands throughout the western United States, including the habitat and potential habitat of the Montana fluvial Arctic grayling, for observation, research, health, aesthetic enjoyment, and other recreational, scientific, and educational activities. WWP's members derive scientific, recreational, health and aesthetic benefits from the Montana fluvial Arctic grayling's existence in the wild.

12.     Plaintiff, GEORGE WUERTHNER, is an active WWP member who worked with Jasper Carlton to draft and file the petition to list the Montana fluvial Arctic grayling in 1991. Mr. Wuerthner is a long-time Montana resident and fly fishing guide, who has long advocated for the protection of native fish in Montana, including the Montana fluvial Arctic grayling. Mr. Wuerthner has guided and fished recreationally on many rivers in Montana, including the Big Hole and Upper Missouri rivers, which are habitat, or potential habitat, for fluvial Arctic grayling, and intends to do so in the future.

13.     Plaintiff PAT MUNDAY is an active member of the Center, who lives in Walkerville, Montana. Mr. Munday, PhD, is a professor at Montana Tech University in Butte, Montana. He enjoys boating and fishing Montana's rivers, including the Big Hole river and the Upper Missouri river and its tributaries. Mr. Munday has a long history of actively working to protect the fluvial Arctic grayling in the Big Hole river. He was president of the George Grant Chapter of Trout Unlimited from 2002-2003, and executive director of the Big Hole River Foundation from 1997-1998.  From 1996-2006 he was a board member of both groups and represented them regarding native species issues, such as protection and restoration of fluvial Arctic grayling in the Big Hole River. This included grant writing, writing and submitting the organizations' comments and concerns to state and federal agencies, writing articles for

newsletters, and speaking at public meetings and forums. From 1996-2005 Mr. Munday was also

the Big Hole River Foundation's representative on the Big Hole Watershed Committee.

14.     Mr. Munday has written a book and several articles on the Big Hole River and the

fluvial Arctic grayling. His book is entitled: *Montana's Last Best River: The Big Hole & its*

*People* (Lyons Press, 2001). It is available at http://www.bhrf.org.

15.     Plaintiffs, their staff, and members use and enjoy the waters and lands of the state

of Montana, in particular the Missouri River basin and the Big Hole river, for recreational,

scientific, aesthetic, and commercial purposes. Plaintiffs, their staff and members, derive or, but

for the declining status of the Arctic grayling in Montana, would derive recreational, scientific,

aesthetic, and other benefits from the existence in the wild of Arctic grayling – both fluvial and

adfluvial - through observation, study, photography, and recreational and commercial fishing.

The past, present, and future enjoyment of these benefits by Plaintiffs, their staff and members

has been, is being, and will continue to be irreparably harmed by Defendants' arbitrary and

capricious refusal to protect Montana's Arctic grayling under the ESA.

16.     The above-described recreational, health, aesthetic, conservation, and scientific

interests of Plaintiffs and their members have been, are being, and, unless the relief requested is

granted, will continue to be adversely affected and irreparably injured by the actions and

omissions of the Defendants. Plaintiffs' injury in fact is fairly traceable to Defendants' conduct

and would be redressed by the relief that Plaintiffs seek in this case.  Plaintiffs have no adequate

remedy at law.

17.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency or

instrumentality of the United States, within the U.S. Department of Interior, and is the federal

agency to which the Secretary of the Interior has delegated the responsibility of implementing the

ESA and its regulations with respect to inland fish species, including the Montana fluvial Arctic grayling at issue here.

     18.     Defendant DIRK KEMPTHORNE is the Secretary of Interior and is sued solely in his official capacity.

## STATEMENT OF FACTS

**A.**     <u>**Statutory Framework of the ESA**</u>

     19.     Congress enacted the ESA "to provide a program for the conservation of … endangered species and threatened species" and "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." *16 U.S.C. § 1531(b)*. In order to obtain the substantive protections provided by the ESA, FWS must first list a species as endangered or threatened pursuant to the statutory listing criteria in Section 4. *16 U.S.C. § 1533*.

     20.     The ESA defines species to include "any subspecies of fish or wildlife or plants, and any *distinct population segment* of any species of vertebrate fish or wildlife which interbreeds when mature." *Id. § 1532(16)* (emphasis added). Because "distinct population segment" is not defined in the ESA, FWS issued the Policy Regarding the Recognition of Distinct Vertebrate Population Segments (hereinafter "DPS Policy") to delineate the factors to be considered when determining whether a population is a DPS. *61 Fed. Reg. 4722 (Feb. 7, 1996)*.

     21.     Pursuant to the DPS Policy, FWS must consider the following:  1) Discreteness of the population segment in relation to the remainder of the species to which it belongs; 2) The significance of the population segment to the species to which it belongs; and 3) The population segment's conservation status in relation to the Act's standards for listing (i.e., is the population segment, when treated as if it were a species, endangered or threatened?). *61 Fed. Reg. at 4725*.

     22.     A population segment will be considered discrete if it is markedly "separated from

other populations because of physical, physiological, ecological, or behavioral factors, including genetic discontinuity," or is "delimited by international boundaries within which differences in control of exploitation, management of habitat, conservation status, or regulatory mechanisms exist that are significant in light of 4(a)(1)(D) of the Act." *61 Fed. Reg. at 4724-25.*

23.     In determining a population's significance, FWS' evaluation "may include, *but is not limited to"* the following: 1) Persistence of the discrete population segment in an ecological setting unusual or unique for the taxon; 2) evidence that loss of the discrete population segment would result in a significant gap in the range of the taxon; 3) evidence that the discrete population segment represents the only surviving natural occurrence of the taxon that may be more abundant elsewhere as an introduced population outside its historical range; and 4) evidence the discrete population segment differs markedly from other populations of the taxon in its genetic characteristics. *Id.* (emphasis added).  Significance is to be considered "in light of Congressional guidance" and may be established based on these or other unenumerated criteria." *Id.*

24.     Notably, in authorizing the listing of distinct population segments, Congress recognized "that there may be instances in which FWS should provide for different levels of protection for populations of the same species.  For instance, *the U.S. population* of an animal should not necessarily be permitted to become extinct simply because the animal is more abundant elsewhere in the world." *S. Rep. No. 96-151, at 11 (1979)* (emphasis added).

25.     A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." *16 U.S.C. § 1532(6).* A species is "threatened" when it is likely to become endangered within the foreseeable future.  *Id. § 1532(20).*

26.     FWS is charged with listing species as threatened or endangered based "solely on the basis of the best scientific and commercial data available . . .," id. § 1533(b)(1)(A), and

whenever listing is warranted based on any one of the following five listing factors:

(A) the present or threatened destruction, modification, curtailment of its habitat or range;
(B) overutilization for commercial, recreational, scientific, or educational purposes;
(C) disease or predation;
(D) the inadequacy of existing regulatory mechanisms; or
(E) other natural or manmade factors affecting its continued existence.

*Id. § 1533(a)(1).*

27.     The ESA provides two mechanisms for considering species for listing.  First, the Act requires FWS to identify and propose for listing those species that require listing under the standards of section 4(a)(1), listed above. *16 U.S.C. §1533(a)(1).*  Second, the ESA's "petition process" enables the public to petition FWS to add a species to the Threatened and Endangered Species List.

**B.     The Montana Fluvial Arctic Grayling**

28.     In North America, fluvial Arctic grayling are distributed across Alaska and Canada.  However, in the Continental U.S., only two geographically isolated populations formerly existed south of Alaska and Canada, one in Michigan and the other in the upper Missouri River drainage in Montana. The Michigan population became extinct in 1936. In Montana, fluvial Arctic grayling were once widely distributed throughout the upper Missouri River drainage above Great Falls.  Today, the fluvial Arctic grayling of the Big Hole River in Montana represents the last, strictly fluvial native grayling population in the continental United States, representing approximately 4% of the historical range of the fluvial Arctic grayling in Montana.

29.     Scientific studies recognize that it is essential to preserve the Montana fluvial Arctic grayling's genetic blue print and enable expansion into its historic habitat because of its unique genetic and ecological characteristics, and because it is the last remaining fluvial Arctic grayling population in the continental U.S.:

COMPLAINT -- 9

The importance of preserving this last indigenous population of fluvial Montana grayling is emphasized by these findings that they are different from all other populations analyzed, both genetically and in being adapted for riverine existence. Others have repeatedly stated the importance of managing and preserving individual stocks of salmonids in order to retain the ability of the species to occupy the varying habitats within its original distribution.

*Calvin M. Kaya, Review of the Decline and Status of Fluvial Arctic Grayling, Thymallus arcticus, in Montana, in Proc. Montana Academy of Sciences 1992.*

30.    Thus, in 1982, FWS used the internal initiative process to place the Montana fluvial Arctic grayling on the candidate species list. After 1983, when the Secretary enacted its listing priority number system, the agency gave the grayling a listing priority number of 3 - the highest priority number available for a subspecies or population. Despite this high listing priority number and the urgency of the threats facing the grayling as documented by FWS itself, the agency failed to move forward with the listing process.

31.    In order to move the listing process forward, a petition to list the fluvial Arctic grayling in Montana as an Endangered Species was received by FWS on October 2, 1991, submitted in part by George Wuerthner who is an active member of plaintiff group Western Watersheds Project and by the Biodiversity Legal Foundation which has since been incorporated into the Center for Biological Diversity, also party to this case. The petition listed the primary causes for the decline of the species as habitat degradation by livestock grazing and stream dewatering, competition with nonnative trout and past overharvesting by anglers.

32.    On January 19, 1993, and long after expiration of the statutory deadlines set forth in the ESA for FWS to respond to the listing petition, the agency published its initial finding in the Federal Register that the 1991 listing petition provided substantial information indicating that listing of the fluvial population of the Arctic grayling of the upper Missouri River in Montana and northwestern Wyoming may be warranted. *58 Fed. Reg. 4975 (January 19, 1993).*

33.     On July 25, 1994, FWS published its "12-month finding" that listing of the Montana fluvial Arctic grayling is "warranted." *59 Fed Reg. 37738 (July 25, 1994).* In this initial 12-month finding, FWS determined that the fluvial form of the Arctic grayling in the upper Missouri River drainage is a distinct population segment because it is genetically diverged from more northern populations in Alaska and Canada, and the Big Hole population is a reproductively isolated stock of Montana grayling that is genetically identifiable and behaviorally adapted to riverine existence. *59 Fed. Reg. 37740.*

34.     The 12-month finding also identified the threats to the grayling, including dewatering of streams, competition or predation by nonnative fish, and habitat degradation. Despite the identified immediate threats, FWS determined that proceeding with the listing was "precluded" by work on other species having a higher priority for ESA listing.

35.     Over the next decade, while the grayling population continued to decline, FWS still did not provide the needed protection under the ESA, but instead continued its "warranted but precluded" findings. Thus, on May 31, 2003, the Center for Biological Diversity, Western Watersheds Project and George Wuerthner filed a complaint in United States District Court in Washington D.C., challenging FWS' "warranted but precluded" determination. *67 Fed. Reg. 40657* (June 13, 2002); *see Center for Biological Diversity v. U.S. Fish and Wildlife Service*, CV 1:03-01110 (JDB).

36.     The parties subsequently filed an amended complaint in 2004 to challenge FWS' renewed "warranted but precluded" determination. *69 Fed. Reg. 24876, 24881 (May 4, 2004).*

37.     This litigation was settled in August 2005, pursuant to which FWS agreed that on or before April 16, 2007 the agency would submit for publication in the Federal Register a final decision as to whether the Montana fluvial Arctic grayling is an endangered or threatened species.

38.     This final listing decision was published in the Federal Register on April 24,

2007. *72 Fed. Reg. 20305 (April 24, 2007).* In FWS' decision, the agency determined that,

contrary to its findings over the previous two decades, the Montana fluvial Arctic grayling is not

a DPS because it is not significant to the taxon as a whole, and therefore is not a listable entity

under the ESA.

39.     In determining that the Montana fluvial Arctic grayling is not significant to the

taxon as a whole, FWS not only violated the plain language and intent of the ESA, but also

misinterpreted the DPS policy, ignored the findings and conclusions of its own and other

scientists, two decades of scientific data, as well as substantial information in the record which

demonstrates that the Montana fluvial Arctic grayling are significant to the taxon as a whole

because they occur in a unique ecological setting, are markedly different in their genetic,

ecological and behavioral characteristics, and that loss of the species from the Big Hole River

would result in a significant gap in the range of the species.

40.     FWS further ignored the conclusions of its own scientists, the best available

science, evidence in the record, its own policies, and a specific request by a number of respected

scientists by refusing to list a larger DPS of Arctic grayling in Montana that would include both

fluvial and adfluvial populations. As FWS itself stated in the agency's 2004 review of the status

of the Montana fluvial Arctic grayling:

> The current DPS justification focuses exclusively on the fluvial Arctic grayling
> life-history type that was thought to predominate in the upper Missouri River
> basin prior to Euro-American settlement. By extension, the data are also
> consistent with the hypothesis that native adfluvial Arctic grayling constitute a
> separate DPS within the upper Missouri River (e.g., Campton and Ardren 2004).
> However, if all indigenous Arctic grayling of the upper Missouri River (both
> adfluvial and fluvial life histories) were considered as a single unit, we believe
> this unit would also qualify as a DPS. Thus a DPS called " the upper Missouri
> River DPS of Arctic grayling " which incorporates all three remaining indigenous
> Arctic grayling populations in Montana (i.e., fluvial Big Hole River, adfluvial Red
> Rocks/Elk lakes, adfluvial/fluvial Madison River/Ennis Reservoir), would also be

justified based on a common post-glacial isolation and resulting genetic distinctiveness relative to northern stocks of Arctic grayling (Scott and Crossman 1973; Lynch and Vyse 1979; Everett and Allendorf 1985; Redenbach and Taylor 1999; Campton and Ardren 2004). This more inclusive DPS would remain significant because it supports the only remnants of indigenous Arctic grayling in the contiguous U.S., regardless of life-history type. A proposed rule will need to define the scope of a DPS for the Arctic grayling of the upper Missouri River basin.

*U.S. Fish and Wildlife Service Species Assessment and Listing Priority Assignment Form for*

*fluvial Arctic grayling (distinct population segment of the Upper Missouri River), commonly*

*called Montana Arctic grayling, November 30, 2004.*

41.     Likewise, a group of five respected fisheries scientists submitted a letter to FWS

requesting that the agency consider listing a larger DPS:

Although FWS has recognized fluvial populations as a DPS since 1994, should the agency find that fluvial and adfluvial populations are not distinct, we hereby request that the agency consider protecting Montana Grayling as a whole, including both fluvial and native adfluvial populations.  Given that fluvial populations are reduced to less than 5% of their historic range (Kaya 1992), that the native population in Elk Lake is believed extinct, and that grayling only occur in small numbers in Red Rock Lakes, listing native populations of the grayling in Montana regardless of whether they are fluvial or adfluvial is clearly warranted.

*Letter to Mark Wilson and Doug Peterson, U.S. Fish and Wildlife Service, from B.G. Blackman,*

*Senior Fish Biologist, Robert A. Clark, Fisheries Scientist, Wayne Hadley, PhD Fisheries*

*Biologist, Jim O'Neil, Senior Fisheries Biologist, September 15, 2006.*

42.     Nonetheless, despite FWS' own conclusions and a specific request from fisheries

scientists, the agency refused to consider a larger DPS in its final listing decision. Such a refusal

is contrary to the ESA and FWS' own Petition Management Guidance:

The Services often receive petitions to list vertebrate populations or subspecies (or varieties) of animals and plants. In most instances, the responsible Service's review is focused on the petitioned entity. However, it is always the Services' prerogative to broaden (but not lessen) the scope of review if available information indicates such an action is appropriate. For example, if a petitioner

requests the listing of a subspecies, the responsible Service may consider listing the entire species if that action is determined to be appropriate.

*Endangered Species Petition Management Guidance, U.S. Fish and Wildlife Service and*

*National Marine Fisheries Service, July 1996, page 6.*

43.     Plaintiffs lack an effective remedy at law to prevent irreparable harm to the species and their interests. Absent judicial relief, such irreparable and imminent harm threatens the viability and continued existence of the Montana fluvial Artic grayling.

## FIRST CLAIM FOR RELIEF:

### FWS VIOLATED THE ESA AND THE APA BY DETERMINING THAT THE MONTANA FLUVIAL ARCTIC GRAYLING IS NOT A DPS

44.     Plaintiffs incorporate by reference all preceding paragraphs.

45.     Based on the above facts and legal obligations, FWS violated the ESA by deciding to not list the Montana fluvial Arctic grayling as a threatened or endangered species, in violation of 16 U.S.C. §§ 1532(16) and 1533. Because of this violation, FWS failed to perform a non-discretionary duty required by ESA. *16 U.S.C. § 1540(g)(1)(C).*

46.     FWS' April 24, 2007 decision that the Montana fluvial Arctic grayling is not a DPS is also arbitrary and capricious an abuse of discretion, and not in accordance with law under section 706(2) of the APA, 5 U.S.C. § 706(2), because it violates the ESA, is not supported by the reasons provided and is not based on the best available science.

## SECOND CLAIM FOR RELIEF

### FWS VIOLATED THE ESA AND THE APA BY FAILING TO LIST THE UPPER MISSOURI RIVER DPS OF ARCTIC GRAYLING

47.     Plaintiffs incorporate by reference all preceding paragraphs.

48.     Based on the above facts and legal obligations, FWS violated the ESA by

COMPLAINT -- 14

deciding to not list the Upper Missouri River DPS of Arctic grayling in Montana, including both fluvial and adfluvial populations, as a threatened or endangered species, in violation of 16 U.S.C. §§ 1532(16) and 1533. Because of this violation, FWS failed to perform a non-discretionary duty required by ESA. *16 U.S.C. § 1540(g)(1)(C).*

49.     FWS' April 24, 2007 decision not to list the Upper Missouri River DPS of Arctic grayling, including both fluvial and adfluvial populations, is also arbitrary and capricious an abuse of discretion, and not in accordance with law under section 706(2) of the APA, 5 U.S.C. § 706(2), because it violates the ESA, is not supported by the reasons provided and is not based on the best available science.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## REQUEST FOR RELIEF

FOR THESE REASONS, Plaintiffs respectfully requests that this Court enter judgment providing the following relief:

A.     Declare that the Defendants violated the ESA and/or the APA by deciding that the Montana fluvial Arctic grayling is not a DPS and thus not listing it as a threatened or endangered species;

B.     Declare that the Defendants violated the ESA and/or the APA by not listing the Upper Missouri River DPS of Arctic grayling in Montana, including both fluvial and adfluvial populations, as a threatened or endangered species;

C.     Direct by injunction that Defendants issue a new 12-month finding on the Montana fluvial Arctic grayling, or in the alternative, on the Upper Missouri River DPS of Arctic grayling;

D.     Grant Plaintiffs their costs of litigation, including reasonable attorney fees as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

E.      Provide such other relief as the Court deems just and proper.

Dated: November 15, 2007.                    Respectfully submitted,

                                             /s/ Judith M. Brawer
                                             Judith M. Brawer (MT Bar # 4308)
                                             1502 N. 7th Street
                                             Boise, ID 83702
                                             (208) 871-0596
                                             (208) 343-2070 *[FAX]*
                                             jbrawer@jbrawerlaw.com

                                             Attorney for Plaintiffs

COMPLAINT -- 16